**Bobby FERGUSON and Sharon Ferguson, Plaintiffs,**

v.

**R.W. FOWLER AND ASSOCIATES and Fibercast, Inc., Defendants–Appellees,**

v.

**Chemetals, Inc., Defendant–Appellant.**

No. 00–5025.

United States Court of Appeals, Sixth Circuit.

Sept. 5, 2001.

Before SILER and GILMAN, Circuit Judges; DUGGAN, District Judge.*

SILER, Circuit Judge.

Third-party plaintiff, Chemetals, Inc., appeals from an order granting summary judgment to third-party defendants, R.W. Fowler & Associates and Fibercast, Inc. The district court held that the defendants were entitled to summary judgment because Chemetals's complaint sought a type of indemnity abolished in Tennessee with the adoption of comparative fault, and because it did not allege or provide evidence showing that the product at issue was defective. We affirm the grant of summary judgment, but also remand in order to allow Chemetals to assert an affirmative defense at trial.

## BACKGROUND

### Facts of the Case

This action arises from another case just decided, No. 00–5009, *Ferguson v. Chemetals, Inc.*, 17 Fed.Appx. 325, 2001 WL 1006168 [WESTLAW CITE]. In that case, the plaintiff, Bobby Ferguson, appealed the grant of summary judgment adverse to his claim that Chemetals was negligent in failing to warn him about, and protect him from, a pipe reducer manufactured by Fibercast and distributed by Fowler. Ferguson contends that the reducer malfunctioned and caused his injuries. The underlying facts for this case can be found in our opinion in Ferguson's appeal and will not be repeated here.

### Procedural History Related to Fibercast and Fowler

Ferguson's response to Chemetals's motion for summary judgment was accompanied by the affidavit of John Slater, who opined that the reducer in question was defective. Chemetals then filed a third-party complaint impleading Fibercast and Fowler. Ferguson later filed a third-party cross claim against Fibercast and Fowler, which was subsequently voluntarily dismissed with prejudice. Chemetals's third-party complaint reads, in relevant part:

> Mr. Slater in Paragraph 3 of his Affidavit stated that the glass fiber reinforced polymeric reducer which failed, leading to the release of hot liquids which burned Mr. Ferguson, was improperly designed and manufactured.
>
> \*    \*    \*    \*    \*    \*
>
> If the plaintiff's expert is correct in his opinion [that the reducer was improperly designed and manufactured], R.W. Fowler and Associates was negligent in failing to warn Chemetals of the possible danger in the reducers.
>
> \*    \*    \*    \*    \*    \*

Chemetals would state that the reducer in question was manufactured by Fibercast, Inc. Chemetals purchased said reducer from and used it in a manner and form in which it was advised by Fibercast's authorized vendor, R.W. Fowler and Associates, who represented to Chemetals that the reducers would be appropriate and effective for the uses intended. Chemetals alleges that if the plaintiffs are found to be correct in their allegations that the reducer in question was improperly designed and manufactured that any and all damages assessed

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

against defendant, Chemetals should be borne by third party defendants, R.W. Fowler and Associates and Fibercast, Inc.

Chemetals prays that if any damages are assessed against it for the injuries that occurred to Bobby Ferguson on June 7, 1995, that third-party defendants, R.W. Fowler and Associates and Fibercast, Inc., be responsible for those damages.

After Chemetals was granted summary judgment on Ferguson's claims, Fibercast and Fowler filed a joint motion for summary judgment. In the order which granted their motion, the court briefly recounted the facts of Ferguson's underlying action and then stated that Chemetals's third-party complaint in the instant action had alleged that if Ferguson recovered against it, "then Fowler and Fibercast were obligated, in effect, to i[n]demnify Chemetals for the alleged defective reducer that was manufactured by Fibercast and sold by R.W. Fowler and Associates." The defendants sought summary judgment against this third-party complaint on the basis that indemnity has been abolished under Tennessee's system of comparative fault, and because Chemetals did not allege or attempt to prove that the reducer was defective. In granting the motion, the court held:

> Upon consideration of the motion for summary judgment, the Court agrees that under Tennessee law, "there can be no claim for indemnification based upon active/passive negligence because that distinction is subsumed into the doctrine of comparative fault." *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 434 (Tenn. 1996). Moreover, there is no factual showing to support a judgment of negligence against Fibercast, Inc. and R.W. Fowler and Associates under *McIntyre*

*v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992).

## STANDARD OF REVIEW

This court reviews *de novo* a district court's grant of summary judgment. *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.2001). Of course, Tennessee tort law applies to the parties' substantive claims and defenses in this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## DISCUSSION

### Indemnity and Contribution

Chemetals argues that the court should not have granted summary judgment because although Tennessee has altered the right to indemnity and contribution by its adoption of comparative fault, these rights still exist to avoid injustice. The defendants argue that Chemetals is improperly seeking a type of indemnification that has been abolished in Tennessee.

In *Owens v. Truckstops of America*, 915 S.W.2d 420 (Tenn.1996), the court described indemnity as follows:

> Truckstops claims that it is entitled to indemnity from either Vitro or Michael because its negligence should be considered passive. It relies upon the rule in Tennessee that one guilty of only "passive" negligence rather than "active" negligence can recover indemnification. Whereas contribution shifts only part of the loss from one party to another, traditional implied indemnity shifts the entire loss from the party found liable to a party who should bear the entire loss. The law of indemnity may be applied where one party is held liable solely by imputation of law because of a relation to a wrongdoer. "Contracts of indemnification may be expressed, or an obligation to indemni-

fy may arise by implication from the relationship of the parties ..."

\* \* \* \* \* \*

[I]ndemnification which imposes the entire loss on one tortfeasor based on the imprecise distinction between active and passive negligence is inconsistent with the comparative fault principles adopted in *McIntyre* and subsequent decisions. Consequently, there can be no claim for indemnification based on active-passive negligence because that distinction is subsumed into the doctrine of comparative fault. While no longer determinative of the right to seek indemnity, the distinctions between the active and passive negligence may be factors to be weighed by the jury in assessing the percentage of fault of the parties. However, where implied indemnity is based on the legal relationship between the parties, the traditional principles of indemnity continue to apply.

*Id.* at 433, 434 (quoting *Houseboating Corp. of Am. v. Marshall,* 553 S.W.2d 588, 589 (Tenn.1977)) (citations omitted).

Chemetals did not have the type of legal relationship with the defendants that would allow Tennessee's "traditional principles of indemnity" to "continue to apply" under *Owens. Id.* Thus, the defendants argue that Chemetals's third-party complaint seeks indemnification "based on the imprecise distinction between active and passive negligence [that] is inconsistent with the comparative fault principles" adopted in Tennessee. *Id.*

Tennessee allows a right of contribution, despite its adoption of comparative fault, in the following circumstances:

1. cases in which prior to *McIntyre* the cause of action arose, the suit was filed and the parties had made irrevocable litigation decisions based on pre-*McIntyre* law, see *Owens v. Truckstops of America,* 915 S.W.2d 420 (Tenn.1996); *Bervoets v. Harde Ralls Pontiac–Olds, Inc.,* 891 S.W.2d 905 (Tenn.1994);

2. cases in which joint and several liability continues to apply under doctrines such as the family purpose doctrine, cases in which tortfeasors act in concert or collectively with one another, cases in which the doctrine of respondeat superior permits vicarious liability due to an agency-type relationship, or in the "appropriate" products liability case, see *Resolution Trust Corp. v. Block,* 924 S.W.2d 354 (Tenn.1996); *Camper v. Minor,* 915 S.W.2d 437 (Tenn.1996); *Owens v. Truckstops of Amer.,* 915 S.W.2d 420 (Tenn.1996), or

3. in the "appropriate case" in which "fairness demands," see *Owens,* 915 S.W.2d at 430 (allowing contribution when "fairness demands"); *Bervoets,* 891 S.W.2d at 907 (recognizing contribution in the "appropriate case").

The third circumstance, however, is not a broad "catch-all" provision that defeats the fundamental concepts of our comparative fault law. The circumstance under which "fairness demands" should be applicable only when failure to allow contribution would impose an injustice.

*General Electric Co. v. Process Control Co.,* 969 S.W.2d 914, 916 (Tenn.1998).

Chemetals argues that contribution should be allowed in this case because it is an appropriate case in which fairness demands that the defendants be liable for any possible recovery on Ferguson's part. The defendants correctly argue that contribution is not available in this case because they would not be jointly liable to Ferguson with Chemetals.

### Evidence of a Product Defect

The district court also based its conclusion on the fact that Chemetals failed to

allege that the reducer was defective or to provide any factual support for such an allegation in its third-party complaint. Chemetals's third-party complaint stated that Ferguson's expert had opined that the reducer "was improperly designed and manufactured." The complaint sought an apportionment of liability attributable to this defect consistent with Ferguson's proof of a defect.

■ To recover against Chemetals, Ferguson must show, in part, a breach of its duty to warn him of, or remove *latent dangers* of which it had actual or constructive knowledge. *See Ellis v. Chase Comm'ns, Inc.*, 63 F.3d 473, 476 (6th Cir. 1995). Proof that a latent danger existed necessarily entails proof that the reducer was defective. Chemetals did not manufacture or distribute the allegedly defective reducer. Nothing in the record indicates that Ferguson has sought to prove that the allegedly defective reducer became defective due to an act or omission on the part of Chemetals. Thus, the proof that Ferguson must present in order to succeed in his lawsuit, that the reducer was defective, would enable a jury to apportion fault among Chemetals and the other alleged tortfeasors.

This course is consistent with Tennessee's policy of an equitable apportionment of fault among those actually responsible. *See Dotson v. Blake*, 29 S.W.3d 26, 28 (Tenn.2000) ("the guiding principle of comparative fault ... is to link liability with fault and thereby achieve the fairest result possible.") (citing *Carroll v. Whitney*, 29 S.W.3d 14, 21 (Tenn.2000) (where the Court held, in the context of allowing the allocation of fault to a nonparty, "we join the vast majority of comparative fault jurisdictions that broadly permit allocation of fault to all persons involved in an injury-causing event.") (citing and quoting *Estate of Hunter v. General Motors Corp.*, 729 So.2d 1264, 1273 (Miss.1999) ("It would be patently unfair in many cases to require a defendant to be 'dragged into court' for the malfeasance of another and to thereupon forbid the defendant from establishing that fault should properly lie elsewhere.")))).

■ Therefore, although the district court correctly granted summary judgment to Fibercast and Fowler against Chemetals, nevertheless, Chemetals should be allowed at trial to assert the apportionment of fault, if any, between it and the other alleged tortfeasors. Likewise, the jury may apportion fault between all tortfeasors, whether the tortfeasors are still parties or not. *See McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn.1992).

Accordingly, we AFFIRM the judgment of the district court but REMAND for further proceedings consistent with this opinion.